UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 4:11-cr-09 |
| v. ) | |
| ) | *Mattice / Lee* |
| MARCUS WADE ) | |

**REPORT AND RECOMMENDATION**

Before the Court is the motion of Defendant Marcus Wade to suppress all evidence, specifically crack cocaine, resulting from his stop by police on February 3, 2011 [Doc. 16].[1] After careful consideration, I find no constitutional violation with respect to the stop of Defendant. Accordingly, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I.     BACKGROUND**

At an evidentiary hearing, the Government offered the testimony of Detective Sergeant Danny Mantooth ("Mantooth"), a 25-year veteran of the Winchester, Tennessee Police Department ("WPD") who has 34 years of law enforcement experience. Mantooth's duties involve criminal investigations in cases typically involving narcotics and vice.

At approximately 10:00 a.m. on February 3, 2011, Mantooth received a telephone call from a known confidential informant ("CI") who informed Mantooth that Defendant would be picking up crack cocaine that same day at an unknown time. The CI told Mantooth that he would call at a later time with more information. Mantooth was already familiar with Defendant because Defendant was under investigation for the sale of narcotics and the murder of two other confidential informants.

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 17]. The Government filed a response in opposition to the motion [Doc. 21]. An evidentiary hearing was held July 27, 2011. Subsequently, each party timely submitted a post-hearing brief [Doc. 23 & 24].

Mantooth had known and worked with the CI for five to seven years and believed him to be reliable. The CI had assisted the WPD in the arrest of four or five individuals in the past, resulting in at least two convictions with charges still pending on some of the other arrests. For prior information, the CI had been paid from a confidential informant fund held by the WPD or had "worked off charges." The CI was paid for the information he provided in this case. The most recent payment to the CI by the WPD prior to this matter was made approximately one and a half to two years before the events at issue here.

The CI called Mantooth for the second time at approximately 5:00 p.m. and said the crack deal would be taking place at a residence located on Allgood St. in Winchester, Tennessee. The WPD set up surveillance on the residence.

The CI made a third call around 7:00 p.m. to say that Defendant was en route to the residence. Mantooth saw Defendant drive up to the residence in a white Mercury Sable, a vehicle Mantooth knew was Defendant's mother's car. Defendant stayed in the residence about 30 minutes, then left. After Defendant left the residence, the CI called Mantooth and said Defendant left without any crack because the crack had not yet arrived from Tullahoma, Tennessee.

WPD continued surveillance in the general area of the residence, but they could not see who was coming and going from the residence at all times. At approximately 10:15 p.m., the CI again called Mantooth and said the crack had arrived at the residence. The CI also told Mantooth that Defendant would be arriving at the residence in about 15 minutes to pick up the crack. The WPD surveillance team did not see the drug source enter or leave the premises, but they did note the arrival of the white Sable, which stayed parked at the residence for a short period of time then left.

2

The CI called Mantooth a final time and reported that Defendant had acquired the crack and driven away in a white, four-door car. Mantooth was located in a church parking lot approximately four blocks from the residence when he received the CI's last telephone call. He relayed the CI's information to WPD officers and ordered the stop of Defendant's white Sable. WPD stopped Defendant's white Sable, which was on a route back to Defendant's home, about three minutes after the CI's last call. Defendant was arrested after crack was found on his person. Mantooth did not participate in the stop but he arrived a few minutes after the stop and assisted in Defendant's arrest.

**II.     ANALYSIS**

Defendant seeks to suppress all evidence resulting from the investigatory stop of his vehicle, arguing that the WPD lacked reasonable suspicion to justify an investigative detention or Terry stop. Specifically, Defendant argues that "the CI in this case is not sufficiently reliable on which to base a traffic stop." [Doc. 23 at PageID #: 48]. The Government contends the stop of Defendant was justified by reasonable suspicion. Although Defendant, as the proponent of the motion to suppress, generally bears the burden of establishing his Fourth Amendment rights were violated, *see Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978), it is the Government's burden to demonstrate by a preponderance of the evidence that a Terry stop was proper. *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990).

An officer may detain an individual for a brief period of time for investigatory purposes if the officer has a reasonable suspicion based on specific and articulable facts that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Saucedo*, 226 F.3d 782, 788 (2000). Reasonable suspicion must be based on "specific and articulable facts" and "rational inferences from those facts." *Terry*, 392 U.S. at 21. Reasonable suspicion requires less than probable cause but

3

more than an inchoate suspicion or hunch. *Saucedo*, 226 F.3d at 788-89. Whether an officer's suspicions are reasonable is assessed in the totality of the relevant circumstances. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

Defendant's sole argument for suppression is that the vehicle stop was not based on reasonable suspicion because the CI was not reliable. This argument fails because the CI's information bore the requisite "indicia of reliability to provide reasonable suspicion to make the investigatory stop." *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)). Mantooth knew the CI and had worked with him over many years. Thus, the CI's reputation could be assessed and he could be held responsible if his allegations were fabricated. *See U.S. v. Ammons*, 419 F. App'x 550, 555 (6th Cir. 2011) (citing *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc) and *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999)). In addition, the CI had provided reliable information in the past leading to multiple arrests and even some convictions. "[I]nformation supplied by an informant of proven reliability may be sufficient, standing alone to demonstrate probable cause." *Smith*, 182 F.3d at 483. As I **FIND** the CI was of proven reliability, the CI's information provided, at least, reasonable suspicion for the vehicle stop.

Furthermore, the police independently corroborated some of the information provided by the CI when they observed the white Sable arrive at and leave the residence in accordance with the CI's information. Under the totality of the circumstances, I **FIND** the WPD had the requisite reasonable suspicion to make an investigatory stop.

4

**III. CONCLUSION**

For the reasons stated above, I **RECOMMEND**[2] that Defendant's motion to suppress [Doc. 16] be **DENIED**.

                                                s/ *Susan K. Lee*
                                                SUSAN K. LEE
                                                UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).