UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:11-cr-9 |
| v. | ) | |
| | ) | Judge Mattice |
| MARCUS WADE, | ) | Magistrate Judge Lee |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

## I.     STANDARD OF REVIEW

Before the Court are Defendant Marcus Wade's objections (Docs. 26, 35) to the

Magistrate Judge's August 8, 2011 Report and Recommendation ("R&R") (Doc. 25).

The Court must conduct a *de novo* review of those portions of the Report and

Recommendation to which objection is made and may accept, reject, or modify, in whole

or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

The Court may also receive further evidence or recommit the matter to the magistrate

judge with instructions. *Id.*

## II.     BACKGROUND

Defendant filed a Motion seeking to suppress all evidence seized during a February

3, 2011 traffic stop that precipitated his arrest.  (*See* Doc. 16).  The Court referred the

Motion to United States Magistrate Judge Susan K. Lee pursuant to 28 U.S.C. § 636(b).

Magistrate Judge Lee held an evidentiary hearing on Defendant's Motion to Suppress on

July 27, 2011. The only individual to testify at that hearing was Detective Sergeant Danny

Mantooth, who participated in the investigation and arrest of Defendant.

In her R&R, Magistrate Judge Lee recounted at some length the facts developed at the evidentiary hearing. (Doc. 25 at 1-3). Defendant has not objected to the basic facts as outlined in Magistrate Judge Lee's R&R. Instead, Defendant's objections focus on Magistrate Judge Lee's findings and the legal conclusions as they relate to those facts, specifically, her finding that reasonable suspicion existed to support the Winchester Police Department's ("WPD") investigatory stop of Defendant. After reviewing the record and finding the facts to be consistent with Judge Lee's R&R, the Court **ADOPTS BY REFERENCE** the facts as set out in Magistrate Judge Lee's R&R. (Doc. 25 at 1-3).

The only additional facts brought to the Court's attention are based on an affidavit and police reports attached to Defendant's objections. (Doc. 35 at 6-8). The affidavit, submitted by Aubrey L. Van Zant (Defendant's passenger at the time of the stop), states that Van Zant and Defendant were traveling to Defendant's mother's house when the police stopped them. (*Id.* at 7). Van Zant stated that Defendant had parked the car directly in front of the house and, when he was exiting the vehicle, Van Zant was unexpectedly grabbed by police and thrown to the ground. (*Id.*). Van Zant stated that he was not aware that they were being followed and that they were not stopped until Defendant parked and were exiting the car in front of his mother's house. (*Id.*).

On January 25, 2012, the Court held a hearing to address Defendant's objections. At the hearing, Defendant reiterated and defined his three objections to the R&R. Specifically, he argued that: (1) the CI on whose information WPD stopped Defendant was not reliable and therefore did not furnish reasonable suspicion sufficient to support the stop; (2) Mantooth was not a credible witness sufficient to permit the court to find that the

-2-

stop was proper; and (3) in any event, the seizure of Defendant violated the Fourth Amendment, insofar as police were not permitted to conduct an investigative "*Terry* stop" in Defendant's front yard. (*See* Doc. 35).

## III.   ANALYSIS

The Fourth Amendment prevents "unreasonable searches and seizures" by federal law enforcement, and the Fourteenth Amendment via incorporation prevents the same by state law enforcement. *See Aguilar v. Texas*, 378 U.S. 108 (1964); *Mapp v. Ohio*, 367 U.S. 643 (1961). There are three kinds of permissible encounters between the police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Smith*, 594 F.3d 530, 535 (6th Cir.2010) (internal citations omitted). While purely consensual encounters are not subject to Fourth Amendment scrutiny, all seizures—including brief investigatory stops—receive this protection. *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011).

Under *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may conduct an investigatory stop only if he "has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place*, 462 U.S. 696, 702 (1983); *Bazzi v. City of Dearborn*, 658 F.3d 598, 604 (6th Cir. 2011). A *Terry* stop "must be based on specific, objective facts," *Brown v. Texas*, 443 U.S. 47, 51 (1979), and requires that "the detaining officers ... have a particularized and objective basis for suspecting the particular person stopped of criminal activity," *United States v. Cortez*, 449

U.S. 411, 417–18 (1981). These facts must "warrant a man of reasonable caution in the belief that [a stop] was appropriate." *Terry*, 392 U.S. at 22 (internal quotation marks omitted).

### A.  The Confidential Informant's Reliability

Defendant first asserts that the stop was invalid, in that the CI on whose information it was based was not reliable. As bases for his claim, he asserts that the CI had a criminal history and was paid for his information. Magistrate Judge Lee considered the CI's reliability, and the Court agrees with her conclusions.

Although the CI stood to gain from his submission of information precipitating Defendant's arrest (as is common in cases involving a confidential informant's assistance), his information bore the necessary "indicia of reliability" to give the officers reasonable suspicion to stop Defendant. *Florida v. J.L.*, 529 U.S. 266, 270 (2000). The CI was known to police, with whom he had worked for over five years. *See United States v. Ammons*, 419 F. App'x 550, 555 (6th Cir. 2011) (citing *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000)). The information was of a "direct and personal" nature, identifying Defendant and the drug he purchased. *See Allen*, 211 F.3d at 976. The informant gave detailed information, providing the police the specific location and the time at which the narcotics purchase would occur. *See id.* In addition, the CI had provided reliable information before, yielding multiple arrests and convictions. *See United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999). In view of all these facts, the CI's reliable information provided reasonable suspicion sufficient to support WPD's stop of Defendant.

-4-

### B. Sergeant Mantooth's Credibility

Defendant next argues that Sergeant Mantooth's testimony at the suppression hearing was not credible, in large measure because Mantooth was not present when Defendant was initially stopped (and thus could not testify as to the circumstances of the stop) and because of an alleged discrepancy between Defendant's booking time as recorded by Mantooth and another officer. (*See* Doc. 35 at 3-4).

The Magistrate Judge based her recommendation in large measure on Mantooth's testimony, evidently finding him to be a credible witness. After a careful review of the record, the Court sees no reason to doubt this finding. The Court notes at the outset that, at the hearing on his objections, the Court repeatedly and explicitly offered Defendant the opportunity to call witnesses or present additional evidence to refute Mantooth's recitation of facts, but he declined to do so.

The discrepancies Defendant has identified in Mantooth's testimony are of little significance. Although Mantooth was not present at the time of the stop, he placed the call directing WPD officers to stop Defendant, and he arrived "just right after the stop," as defendant was being arrested. (*See* Doc. 27 at 28-29). His testimony concerning the stop is consistent with the role he played in the investigation. Further, the time discrepancies between the reports do nothing to undermine the substance of Mantooth's report, and the reports coincide in all other meaningful respects. *See, e.g., United States v. Jones*, 364 F. App'x 205, 207 (6th Cir. 2010) (affirming a district court's positive credibility determination when discrepancies between two officers' testimony were "of little significance" and the officers otherwise corroborated each other "on the critical issues").

Consequently, and in view of the fact that Defendant declined the express opportunity to present any further evidence as to Mantooth's credibility, the Court accepts his testimony as credible.

### C. Legality of the stop

Defendant's argument in this respect is somewhat unclear. In his written objection, he seemed to indicate that, because Defendant had, of his own volition, parked the car in which he was traveling, no police "stop" could have taken place. (*See* Doc. 35 at 2). At the hearing on his objections, Defendant provided slightly more clarity, arguing that, because he was at his mother's home when approached by police, officers could not legally conduct a *Terry* stop. It is not clear from the evidence of record whether Defendant lived in the home as well.

The Court will assume for the moment that the affidavit submitted in connection with Defendant's objections is accurate and that, as he argued, Defendant was outside the car parked in front of his mother's home when he was detained by police. Even under these assumptions – which the Court makes only for the purposes of this Motion and does not accept for any other purpose – WPD's stop was permissible and based on reasonable suspicion.

As above, a CI had provided credible information that Defendant was engaged in criminal activity – namely, purchasing crack-cocaine. When Defendant appeared, entered the home, and left just as the CI said he would, police followed him. It does not matter whether the stop occurred while the vehicle was moving or parked. *See, e.g., United States v. Clay*, 181 F. App'x 542, 543-44 (6th Cir. 2006) (holding that a *Terry* stop of

individuals in a parked car was reasonable); *United States v. Hurst*, 228 F.3d 751,757 (6th

Cir. 2000) ("The *Terry* doctrine applies to investigative stops of moving automobiles.").

To the extent that Defendant argues that, as a matter of law, a *Terry* stop cannot

take place in front of his mother's home, he identified no case law to that effect, and his

counsel declined the opportunity to research the matter and provide such precedent. More

to the point, the United States Court of Appeals for the Sixth Circuit has permitted and held

as reasonable stops conducted in front of private homes. *See, e.g., O'Malley v. City of*

*Flint*, 652 F.3d 662, 670 (6th Cir. 2011) (concluding, as an alternative holding, that an

officer's brief investigatory stop of a car and passengers he followed into a private driveway

was constitutional pursuant to *Terry*); *United States v. Thomas*, 77 F. App'x 862, 863-64

(6th Cir. 2003) (permitting a *Terry* stop on the porch of an apartment building*); Clay*, 181

F. App'x at 543-44 (holding that an investigatory stop conducted on a parked car located

in a driveway purportedly owned by one of the vehicles passengers was permissible); *see*

*also Illinois v. McArthur*, 531 U.S. 326, 335 (2001) ("This Court has held, however, that a

person standing in the doorway of a house is in a public place, and hence subject to arrest

without a warrant permitting entry of the home.") (internal quotations omitted); *United*

*States v. Bay*, 662 F.3d 1033, 1036 ("In addition, being detained outside of one's home

poses no barrier to a lawful *Terry* stop.").[1]

---

[1]  To the extent that Defendant may argue that the "stop" was, in fact, an arrest – an argument that
he has not, in fact, made – the seizure would still be valid.  As the government articulated at the hearing on
Defendant's objections, even if the stop were characterized as an arrest, the police had probable cause to
support it and a subsequent incidental search.  *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("It is not
disputed that the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause
to believe that the suspect has committed or is committing an offense."); *McCray v. Illinois*, 386 U.S. 300, 304
(1967) (concluding that information from a proven and reliable informant, combined with police corroboration
of the informant's tip, is sufficient to establish probable cause supporting an arrest).  Likewise, to the extent
that Defendant may maintain that he was subject to an unlawful search, his claims are without merit.

In short, the Magistrate Judge correctly determined that the CI's information was reliable, that Sergeant Mantooth's testimony was credible, and that WPD's stop of Defendant was premised on the officers' reasonable, articulable suspicion that Defendant was engaged in a narcotics purchase. Consequently, there is no reason to depart from her conclusion, and the Court will overrule Defendant's objections.

Accordingly, and for the reasons stated, Magistrate Judge Lee's Report and Recommendation (Doc. 25) is **ACCEPTED** and **ADOPTED**, and Defendant's Motion to Suppress (Doc. 16) is **DENIED**.

**SO ORDERED** this 30th day of January, 2012.


_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

Regardless of how he may characterize his encounter with police, WPD found the crack cocaine either as the result of a permissible frisk conducted after a valid investigatory stop or as the fruits of a legitimate search conducted incident to his arrest.  *See U.S. v. Smith*, 427 F. App'x 413, 416 (6th Cir. 2011) ("As part of the investigatory stop, an officer who 'has reason to believe that he is dealing with an armed and dangerous individual' may conduct a reasonable search, often called a *Terry* frisk, of the individual, for the safety of the officer and those in the area."); *DeFillippo*, 443 U.S. at 35 ("The fact of a lawful arrest, standing alone, authorizes a search.").